1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

THE HONORABLE BENJAMIN H. SETTLE

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

**MARY A. KELLOGG, as Personal Representative of the ESTATE OF JAMES H. HAMRE**,

Plaintiff,

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, a/k/a AMTRAK, a District of Columbia corporation; and, DOE DEFENDANTS 1-50,**

Defendant.

Case No. 3:20-cv-05664-BHS

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT PURSUANT TO FRCP 12(b)(6)

NOTED FOR HEARING: September 4, 2020

*ORAL ARGUMENT REQUESTED*

## I.    INTRODUCTION & RELIEF REQUESTED

Defendant Amtrak seeks to bind the newly-enfranchised wrongful death beneficiaries in this case to a prior confidential settlement contract to which they were not—and could not possibly have been—a party. That is contrary to law, public policy, and common sense. For a number of reasons, Defendant's arguments must be rejected, and their motion denied.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
Case No. 3:20 -cv-05664-BHS - Page 1

**ROSSI VUCINOVICH**
A Professional Corporation
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

First, the former Personal Representative of the Estate of James Hamre had neither the capacity, the legal authority, nor the intent to contractually waive wrongful death claims for the decedent's siblings in a settlement agreement. That is because at the time of the settlement agreement, and throughout the pendency of the former PR's original appointment in probate, the siblings' wrongful death claims did not legally exist. It was not that these claims had not "accrued" or that they were otherwise unripe or unknown, as is the subject of most cases regarding the effectiveness of future damage waivers; there simply was no legal basis for these claims at all under Washington tort law at the time. Since the siblings' claims did not legally exist when the settlement agreement was made, the PR was not vested with authority under the law to administer, advocate, negotiate, or otherwise resolve those nonexistent claims for third parties. Even if he had attempted to do so (which he did not), any such action would be *ultra vires* on the part of the PR, and would be voidable as such.

In wrongful death cases proceeding under Washington tort law, as here, the Legislature has designated the Personal Representative as the legal construct by which injured third parties present their own individual personal injury claims for adjudication. Importantly, however, in no sense do wrongful death claims "belong" to the Estate, or even "derive" from the Estate. Rather, they are private rights of action vested in the injured person who has suffered harm due to the wrongful death of a loved one; those claimants just have a legislatively-mandated procedural route by which those claims are to be litigated. *See* RCW 4.20.010(1) (creating cause of action for the "economic and noneconomic damages **sustained by the beneficiaries**…" to be brought by the PR) (emphasis added); *see also Gray v. Goodson*, 61 Wn.2d 319, 327, 378 P.2d 413, 417 (1963) ("The personal representative is merely a statutory agent or trustee acting in favor of the

PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

Case No. 3:20 -cv-05664-BHS - Page 2

**ROSSI VUCINOVICH**
A PROFESSIONAL CORPORATION
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

class designated in the [wrongful death] statute, with no benefits flowing to the estate of the injured deceased.").

So the former PR in this case never had the right to act as the siblings' "statutory agent" or "trustee" for their wrongful death claims, prior to the July 2019 change in law creating those claims in the first place.[1] He similarly never had standing to assert these claims in litigation or otherwise against Amtrak, let alone settle or waive them. As such, Amtrak simply settled in 2018 with the Estate for Amtrak causing Mr. Hamre's death (the "survival action"), and with his mother as the only then-existing wrongful death beneficiary. It is not at all uncommon for a tortfeasor to settle with some, but not all, claimants. However, Amtrak did not—and lawfully could not—settle with the PR for the siblings' claims, because the PR did not have authority to resolve claims of those third parties that did not even yet exist.

Second, and even more fundamentally, under any fair conception of contract law, the siblings simply were not parties to the settlement agreement. They were not named in any document as settling parties, they were never noted as beneficiaries, and were never even identified as *potential* claimants. *See* (Dkt. No. 8-8 at 2) (defining "Releasors"). And it is undisputed that they were not afforded any consideration for their purported waiver of their nonexistent cause of action; indeed, this fact alone would invalidate any such purported contractual waiver, as a lack of consideration renders a purported contract invalid. *E.g., Yakima*

---

[1] RCW 4.20.010, *et seq*., the wrongful death statutes applicable here, were amended in 2019 by SSB 5163, which changes were made effective and retroactive on July 28, 2019. *Declaration of Benjamin Nivison in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss* ("*Nivison Decl*.,"), ¶ 3, Ex. A (Certification of Enrollment and Text of SSB 5163).

PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

Case No. 3:20 -cv-05664-BHS - Page 3

**ROSSI VUCINOVICH**
A PROFESSIONAL CORPORATION
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

1    *Cty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 389, 858 P.2d 245,

2    255 (1993) ("consideration is also an essential element of a contract") (citing *Peoples Mortgage*

3    *Co. v. Vista View Builders,* 6 Wn. App. 744, 747, 496 P.2d 354 (1972)); *Ponder v. Chase Home*

4    *Fin., LLC*, 865 F. Supp. 2d 13, 18 (Dist. D.C. 2012) ("The essential elements of a valid contract

5    are competent parties, lawful subject matter, legal consideration, mutuality of assent, and

6    mutuality of obligation.") (*citing Henke v. U.S. Dep't of Commerce,* 83 F.3d 1445, 1450

7    (D.C.Cir.1996)).[2]

8          Indeed, Defendant Amtrak admits throughout its moving papers that the interests of these

9    new beneficiaries were not considered, and that they were not within the contemplation of the

10    settling parties at the time the contract was negotiated or executed. Yet Amtrak nevertheless seeks

11    to bind them to a contract to which they were undeniably not made party. It also seeks to render

12    the Washington Legislature's actions a nullity—Amtrak urges this Court rule that the people's

13    representatives in Olympia created a right of action for these aggrieved siblings, but that through

14    no actions of their own they should be denied access to a remedy. Defendant Amtrak in this way

15    invites error, and seeks to impose a continuing injustice on the wrongful death claimants here,

16    whose losses were caused by the admitted negligence and lack of care shown by Amtrak to their

17    deceased brother.

18

19

20    [2] The terms of the Settlement Agreement indicate that it is to be construed and interpreted according to the laws of
the District of Columbia. (Dkt. No. 8-8 at 3, ¶ 7). To the extent that questions of contractual validity would be viewed

21    by giving effect to this contractual choice of law, D.C. law is cited herein for that purpose. Of course, the underlying
question of the wrongful death tort and the effectiveness and meaning of Washington's statutory scheme are

22    questions of Washington law, and contractual selection of D.C. law cannot control such issues.

23    PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

24    Case No. 3:20 -cv-05664-BHS - Page 4

**ROSSI VUCINOVICH**
A PROFESSIONAL CORPORATION
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

25

Finally, this motion does not present the correct procedural mechanism for dismissal of this case, or for the challenge to the constitutionality of the underlying statute. Although disguised as a Rule 12 motion to dismiss "for failure to state a claim," Plaintiff's legal "claim" actually is obviously well-pled and well-established: the tort of wrongful death under Washington law. Tellingly, Defendant never even bothers to argue or brief the question of the adequacy of pleading the tort of wrongful death, or facts sufficient to give adequate notice of the nature of the claims under Rule 8—which is the actual "call of the question" in a Rule 12(b)(6) motion. *E.g., Kochlacs v. Local Bd. No. 92*, 476 F.2d 557 (7th Cir. 1973) (explaining that a motion to dismiss is ordinarily directed to allegations of the complaint, and if a claim for relief could "conceivably be proved," the motion should not be granted). Instead, Defendant seeks to litigate the underlying factual issues at this preliminary stage. That is improper. *See Williams v. Gorton*, 529 F.2d 668, 672 (9th Cir. 1976) ("Ordinarily a motion to dismiss should be disfavored, and doubts should be resolved in favor of the pleader."). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quotations omitted). The Rule 12 bar is readily met by Plaintiff's Complaint here.

Amtrak instead just raises a series of factual contentions and characterizations well outside the pleadings.[3] But a motion to dismiss is not a proper vehicle for determination of facts

---

[3] Plaintiff objects to the presentation of the submitted materials outside the pleadings, and moves that the Court exclude them for purposes of considering this Rule 12 motion. If the Court nevertheless considers these items, then the motion is converted to one for summary judgment, as provided in Fed. R. Civ. P. 12(d), and Plaintiff must be afforded the opportunity to investigate the facts at issue via discovery, per Rule 56(d).

PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

Case No. 3:20 -cv-05664-BHS - Page 5

**ROSSI VUCINOVICH**
A PROFESSIONAL CORPORATION
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

1  outside the allegations of the complaint. The real issue that Defendants seek to elevate for

2  decision are the affirmative defenses of "accord and satisfaction" or "waiver" by contract. Those

3  issues simply are unrelated to a "failure to state a claim," and so are not subject to a Rule 12(b)(6)

4  motion. Those are affirmative defenses that turn on the disposition of facts, not just on the

5  language of pleadings. Thus, this motion is an inappropriate abuse of process by Defendant

6  Amtrak. Amtrak seeks to introduce documents outside the pleadings in a poorly-disguised and

7  procedurally impermissible summary judgment motion, and so to avoid even having to file an

8  Answer addressing the allegations of the Complaint. The Court should deny this motion on that

9  basis alone, and order Defendant Amtrak to timely Answer the Complaint.

10        Defendant Amtrak also violates the Federal Rules of Civil Procedure in presenting a

11  constitutional challenge to a state statute, without complying with the requirements of Rule 5.1.

12  As stated there, if Amtrak seeks to challenge the constitutionality of the Washington Legislature's

13  actions in adopting the revisions to RCW 4.20.010, *et seq.*, there are procedural requirements for

14  doing so. Importantly, notice and service of such a challenge has to be presented to the

15  Washington State Attorney General, so that the State can defend the constitutionality of the

16  challenged statute. Fed. R. Civ. P. 5.1(a). Amtrak never even bothered to file a Notice of

17  Constitutional Question, but instead seeks to litigate the entirety of that issue in a pre-pleading

18  Rule 12 motion. That is improper, and renders its constitutional arguments procedurally deficient.

19        **A. Objection to Documents outside the Pleadings, and Motion for Continuance Pursuant to FRCP 56(d).**

20

21        As noted above, Plaintiff objects to the consideration and acceptance of the materials

22  submitted by counsel for Defendant Amtrak. Specifically, all of Docket No. 8 and its attachments

23  PLAINTIFF'S RESPONSE IN OPPOSITION
   TO DEFENDANT'S MOTION TO DISMISS

24    Case No. 3:20 -cv-05664-BHS - Page 6

**ROSSI VUCINOVICH**
A PROFESSIONAL CORPORATION
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

25

are improper documents outside the pleadings that should not be considered for purposes of this Rule 12 motion.

To the extent that papers outside the pleadings are presented and considered here as contemplated by FRCP 12(d), however, Plaintiff respectfully requests a continuance of this matter pursuant to FRCP 56(d). That continuance will allow investigation and discovery into Defendant's urged contentions regarding the effect, meaning, and import of certain probate actions and documents; the intent of the parties in reaching the initial settlement agreement; and the state of knowledge and scope of authority from the involved persons. It will allow Plaintiff to engage in discovery related to these items, and thereby submit admissible affidavits and evidence for the Court's consideration. Only with that time in discovery will Plaintiff have the full and fair opportunity to present a complete record to the Court for adjudication, which this early-stage motion has otherwise rendered impossible.

**B. Motion to Strike Improperly-Noticed Challenges to Constitutionality of State Statute.**

Pursuant to FRCP 5.1 and W. Dist. Wash. LCR 7(g), Plaintiff moves to strike the portions of Defendant's brief that alleges and addresses the unconstitutionality of Washington's wrongful death statutes. *See* (Dkt. No. 6 at 10-22). This is improperly pled in the Rule 12 context, and lacks notice to Washington's Attorney General, as required by rule. The Court cannot and should not address the constitutionality of a state statute under such circumstances, in the face of violations of the procedural rules governing such challenges.

Fortunately, for substantive reasons, the Court need not even reach the constitutionality question to resolve this motion in Plaintiff's favor. This circumstance simply does not present

PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

Case No. 3:20 -cv-05664-BHS - Page 7

**ROSSI VUCINOVICH**
A PROFESSIONAL CORPORATION
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

1  any retroactive alteration of any rights between the parties in this case, and there is no retroactive

2  application of the statute in any fashion of import here. <u>There was no contract</u> between the

3  wrongful death beneficiaries here and Defendant Amtrak, and by law there could not have been.

4  Thus, there is no alteration of any established right in contract, or the *post facto* change of any

5  adjudicated legal status here. Similarly, the statute of limitations on the underlying tort has not

6  expired, and there is thus no issue of "rejuvenating" a previously expired claim. The

7  constitutional issues are actually not raised here, were the Court to rightly rule that the prior

8  release did not and could not bind the newly-enfranchised wrongful death beneficiaries here.

## II.    RELEVANT FACTS

10    The only relevant facts for purposes of addressing a Rule 12(b)(6) Motion to Dismiss for

11  Failure to State a Claim are those alleged in the Complaint. All such alleged facts must be taken

12  as true for purposes of this motion, and construed in favor of Plaintiff as the non-moving party.

13  Plaintiff stands on the allegations as stated in the Complaint (Dkt. No. 1), which allege facts

14  adequate to sustain her burden of pleading a cause of action for wrongful death under Washington

15  law. Defendant's motion should be denied on that basis.

16    For the sake of completeness, however, and without waiver of Plaintiff's above-stated

17  objection to the Court considering and accepting materials outside the pleadings here, Plaintiff

18  provides additional factual information alleged as follows:

19    James Hamre was killed on December 18, 2017 in an Amtrak passenger train crash that

20  occurred near DuPont, Washington. (Dkt. No. 1 at ¶¶ 1.2-1.6). Amtrak Train 501 crashed that

21  day due to the negligence of Defendant Amtrak. *Id.* A number of serious and significant injuries

22  occurred in that crash, along with at least three deaths. Amtrak has admitted fault in the series of

23  PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

24    Case No. 3:20 -cv-05664-BHS - Page 8

**ROSSI VUCINOVICH**
A PROFESSIONAL CORPORATION
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

25

claims that have followed, including in multiple lawsuits currently and previously pending before this Court.

Mr. James Hamre died without any surviving spouse or children. He was survived by his mother, Carolyn Hamre, and three siblings: Thomas Hamre, Mary Kellogg, and Michael Hamre.

A probate action was opened in order to facilitate the resolution of the decedent Mr. James Hamre's claims for personal injuries that resulted in his death (a "survival action"). A settlement was reached in that matter without a lawsuit being filed, between Defendant Amtrak and the former Personal Representative for the Estate, Mr. Thomas Hamre. The operative settlement agreement appears to be dated April 10, 2018. *See generally* (Dkt. No. 8-8). The initial probate action appears to have closed on or about August 18, 2018. (Dkt. No. 8-5 at 3).

The April 2018 Settlement Agreement nowhere makes any recitation of claimants Mary Kellogg or Michael Hamre as "Releasors," or parties to the claims being settled. *See generally* (Dkt. No. 8-8). Rather, "Releasors" is defined in that document only as "Thomas C. Hamre, as personal representative of the Estate of James H. Hamre [address omitted], and the Estate of James H. Hamre." *Id.* at 1.

The April 2018 Settlement Agreement only purports to settle claims "sustained or received **by the Releasor and Decedent** James H. Hamre as a passenger on Amtrak Train 501 at or near Dupont, Washington on December 18, 2017." *Id.* at 1 (emphasis added). Notably, there is no mention of any claims or injuries sustained by any other person. The only releasing parties identified in the contract are the Estate (for the decedent's claims) and the PR (for any claims subject to the PR's authority at the time of the release).

PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

Case No. 3:20 -cv-05664-BHS - Page 9

**ROSSI VUCINOVICH**
A PROFESSIONAL CORPORATION
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

1    Moreover, the language of the April 2018 Settlement Agreement does not anywhere

2    purport to release any claims for wrongful death. *See id*. Such claims are by law held by the

3    injured third parties in any event, and so were not held by either the PR or the Estate—who were

4    the sole identified "Releasors." *Woodall v. Avalon Care Ctr.-Fed. Way, LLC*, 155 Wn. App. 919,

5    931–32, 231 P.3d 1252, 1258 (2010) (citing cases and discussing in detail the nature of wrongful

6    death claims under Washington law, and to whom such claims belong). But third-party claims

7    are not itemized or listed among the claims, nor are any wrongful death beneficiaries identified

8    or acknowledged. *See generally* (Dkt. 8-8 at 1).

9    No consideration was paid to or received by surviving siblings Mary Kellogg or Michael

10    Hamre, in connection with the April 2018 Settlement Agreement. (Dkt. 1 at ¶1.14).

11    Mary Kellogg and Michael Hamre were not parties to or beneficiaries of the April 2018

12    Settlement Agreement. *Id*. at ¶¶ 1.8-1.9.

13    No party to the April 2018 Settlement Agreement ever contemplated or intended the

14    wrongful death claims of Mary Kellogg or Michael Hamre to be subject to that contract. *Id*. at ¶

15    1.11.[4]

16    Nowhere in the April 2018 Settlement Agreement are either Mary Kellogg or Michael

17    Hamre's interests or injuries identified, considered, or addressed. *Id*. at ¶ 1.13.

18

19

20

21    ─────────────
[4] This fact alone, which as alleged must be accepted as true, is sufficient to defeat Defendant Amtrak's argument

22    and motion.

23    PLAINTIFF'S RESPONSE IN OPPOSITION
      TO DEFENDANT'S MOTION TO DISMISS

24    Case No. 3:20 -cv-05664-BHS - Page 10

25

**ROSSI VUCINOVICH**
A PROFESSIONAL CORPORATION
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

The Estate did not have the legal capacity or authority to settle any claims of Mary Kellogg or Michael Hamre at the time of the April 2018 Settlement Agreement, because such claims did not yet exist under the law. *Id.* at ¶ 1.15.

The April 2018 Settlement Agreement, to the extent that Defendant Amtrak urges inclusion of wrongful death claims of third parties who were not in privity of contract, is ambiguous. *Id.* at ¶ 1.16.

Effective July 28, 2019, the Washington Legislature amended the state's wrongful death statutes, taking away any requirement of financial dependency in order to qualify a surviving sibling as a wrongful death beneficiary. *See* RCW 4.20.010, *et seq.*; *Nivison Decl.*, ¶ 3, Ex. A (Certificate of Enrollment and "red-lined" language changes to statute).[5]

As a matter of law, until July 28, 2019, neither Mary Kellogg nor Michael Hamre had a cause of action acknowledged under the law for the wrongful death of their brother, James Hamre. (Dkt. No. 1 at ¶ 1.10). At the time he signed a contract with Defendant Amtrak, Thomas Hamre as Personal Representative for the Estate thus lacked any standing or capacity to adjudicate, settle, or waive the not-yet-extant wrongful death claims of his siblings.

### III.    ISSUE PRESENTED

1.    Can a Personal Representative under Washington law waive or otherwise settle claims of third party wrongful death beneficiaries in a settlement contract, where the wrongful

---

[5] Defendant Amtrak submits the House Bill Report, and the Senate Bill Report from the Legislature's consideration of the revised RCW 4.20.010, *et seq.* This is improper, and immaterial, and betrays a lack of understanding as to what those reports actually constitute. As stated on those documents "This analysis is not a part of the legislation, nor does it constitute a statement of legislative intent." (Dkt. No. 8-11 at 2 (House Bill Report)) and (Dkt. No. 8-10 at 2 (Senate Bill Report)). These materials are irrelevant and facially state that they do not reflect "legislative history," even if issues of the same were properly before the Court.

PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

Case No. 3:20 -cv-05664-BHS - Page 11

**ROSSI VUCINOVICH**
A PROFESSIONAL CORPORATION
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

1  death claims of those third parties did not exist as matter of law at the time of the contract, and

2  where they were created by an remedial statutory amendment more than a year after the contract

3  at issue, and after close of probate?

4      *Suggested Answer*:      *No. There is no waiver or settlement of Mary Kellogg's or*

5      *Michael Hamre's wrongful death claims via the April 2018 Settlement Agreement, as*

6      *a matter of law.*

7      2.    Even if a Personal Representative had such legal authority under Washington law,

8  should the Court deny this motion due to the insufficiency and invalidity of the contract, due to

9  failure of notice, failure of consideration, failure of any "intentional relinquishment of a known

10  right," or otherwise due to ambiguities in the April 2018 Settlement Agreement that require

11  factual investigation beyond the pleadings?

12      *Suggested Answer*:    *Yes. Even if the PR had authority to settle non-existent*

13      *claims for third parties over whose rights he had no lawful authority, the April*

14      *2018 Settlement Agreement fails for want of consideration. It is ambiguous with*

15      *regard to the scope of the claims released, and with regard to the intention of the*

16      *parties regarding non-extant third party wrongful death releases.*

17      3.    Should the Court deny this motion as procedurally improper under Rule 12(b)(6),

18  as it does not carry its burden on any "failure to state a claim" basis, but instead is a disguised

19  motion for summary judgment on the affirmative defenses of "accord and satisfaction" or

20  "waiver?"

21      *Suggested Answer*:    *Yes. This motion does not meet its burden to show a*

22      *"failure to state a claim" under Fed. Civ. P. 12(b)(6). The cause of action is*

23  PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

24  Case No. 3:20 -cv-05664-BHS - Page 12

**ROSSI VUCINOVICH**
A Professional Corporation
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

25

1     *well-pled, and adequate under Rule 8, which is the scope of the issue presented*

2     *by a Rule 12(b)(6) motion to dismiss. Affirmative defenses that Defendant Amtrak*

3     *may seek to advance are not ripe for resolution via this motion, and are not*

4     *properly before the Court at this stage of the proceedings.*

5     4.     Should the Court deny this motion as procedurally improper under Rule 5.1, as

6     Defendant Amtrak seeks to challenge the constitutionality of a state statute, but it has failed to

7     properly notice and certify service on the State of Washington, as required by rule? Should the

8     Court grant Plaintiff's motion to strike these portions of Defendant's brief?

9     *Answer:*     *Yes. This motion presents an improper and procedurally-deficient*

10    *challenge to the constitutionality of a Washington statute. Compliance with Rule*

11    *5.1 is required prior to the Court contemplating any such challenge. Plaintiff's*

12    *motion to strike should be granted, and questions of constitutionality reserved*

13    *until such time as compliance with the procedural requirements for such a*

14    *challenge have been met.*

15    ## IV.     EVIDENCE RELIED UPON

16    In support of this response in opposition to Defendants' Motion to Dismiss, Plaintiff relies

17    upon this response brief and the authorities stated herein, the Declaration of Benjamin Nivison

18    in support hereof and all attachments thereto, the Declaration of Andrew Yates and all

19    attachments thereto, and all other documents and evidence otherwise properly before the Court

20    in connection with this matter. Plaintiff renews her objection to consideration of materials outside

21    the pleadings for purposes of this motion.

22

23    PLAINTIFF'S RESPONSE IN OPPOSITION
      TO DEFENDANT'S MOTION TO DISMISS

24    Case No. 3:20 -cv-05664-BHS - Page 13

      **ROSSI VUCINOVICH**
      A PROFESSIONAL CORPORATION
      1000 Second Avenue, Suite 1780
      Seattle, Washington 98104
      (425) 646-8003/ Fax (425) 646-8004

25

1

## V.    ARGUMENT & AUTHORITY

2

**A.  The Authority of a Personal Representative under Washington Law is Limited,
and a PR Can Only Settle Claims for Third Party Wrongful Death Beneficiaries if
Those Claims Exist by Law.**

3

4

A release only covers injuries contemplated by the parties at the time the release was

5

executed. *See Bakamus v. Albert*, 1 Wn.2d 241, 249, 95 P.2d 767 (1939). In *Bakamus*,

6

Washington's Supreme Court laid out a general principle for releases, wherein it stated, "[i]t is

7

the general rule that ordinarily a release covers all such matters as may fairly be said to be within

8

the contemplation of the parties when it was given, subject to provisos stated in the release, and

9

no others." *Id.* Here, the facts as alleged demonstrate that the claims of third party siblings were

10

not within the scope of the April 2018 release between the parties. That is of course

11

understandable, because those claims did not come into legal existence until the Legislature

12

created those causes of action more than a year later.

13

Later courts adopted the same principle to determine which injuries were encompassed

14

by a release. *See Nevue v. Close*, 123 Wn. 2d 253, 258, 867 P.2d 635 (1994); *Finch v. Carlton*,

15

84 Wn.2d 140, 146, 524 P.2d 898 (1974). In *Finch*, the court adopted a set of criteria to balance

16

whether a release of unknown injuries was "fairly and knowingly made." *Finch*, 84 Wn.2d at

17

146. The Ninth Circuit follows similar logic. A party's intent and knowledge are key

18

considerations when a court examines any release. *See U. S. for Use & Benefit of Wyatt & Kipper*

19

*Engineers, Inc. v. Ramstad Const. Co.*, 194 F. Supp. 379, 381 (D. Alaska 1961) (citing cases).

20

Washington's Supreme Court addressed the question of release of non-existent claims in

21

*Frias v. Asset Foreclosure Servs., Inc.*, 181 Wn.2d 412, 334 P.3d 529 (2014). As the *Frias* Court

22

stated, "**One cannot waive a right that does not exist**, but one can waive the right to bring a

23

PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

24

Case No. 3:20 -cv-05664-BHS - Page 14

**ROSSI VUCINOVICH**
A PROFESSIONAL CORPORATION
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

25

claim for damages before the claim accrues." *Id.* at 424–25 (ruling that a preinjury waiver of liability forecloses a person's ability to bring suit based on the waived claim) (emphasis added). In *Frias*, the court determined that at the time the action was brought by the plaintiff in that case, the requirements for a claim under the applicable statute were not met, which meant that they could not be waived.

Similarly, in this case, at the time the April 2018 release was signed, there was no cause of action for the decedent's siblings. In *Frias*, the Court stated that a pre-injury release could be valid, but that is not the case here. Here, the *claim* did not exist at the time the release was signed, but instead exists as of July 28, 2019, even though the *injury* already existed. As Amtrak ironically acknowledges, there was no way that the parties to the April 2018 release could have known at the time the release was signed that an entirely new cause of action would eventually exist, for new plaintiffs. Therefore, this release could not have been "fairly and knowingly made," in such a way as to release those non-existent claims.

Washington law related to *ultra vires* actions is also significant here, as if then-PR Thomas Hamre actually attempted to release the not-yet-existent wrongful death claims of himself and his siblings, that would be in excess of his authority under the law as PR. Of course, this is a factual question that hinges on intent and indicia of intent, which would require discovery to complete. But even if the proper deferential review in favor of Plaintiff here were turned on its head, and Defendant Amtrak's argument accepted as correct, the PR's actions would be void as *ultra vires*—beyond the scope of his lawful authority.

In *State v. O'Connell*, Washington's Supreme Court explained in a review of applicable case authority that "even where there was an express contract, if it was *ultra vires*, [a party]

PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

Case No. 3:20 -cv-05664-BHS - Page 15

**ROSSI VUCINOVICH**
A PROFESSIONAL CORPORATION
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

1   ordinarily cannot recover upon either the contract itself or an implied contract." 83 Wn.2d 797,

2   836, 523 P.2d 872, 895 (1974), *supplemented*, 84 Wn.2d 602, 528 P.2d 988 (1974). This was

3   so, according to the *O'Connell* Court, "even though [the party] has performed in reliance upon

4   the authority of the agent with whom he has contracted." *Id*. In a footnote, the Court explained

5   why this outcome is not unjust: "This principle includes the rule that one dealing with a

6   [person] whose powers are defined by statute is presumed to know the limits of those powers."

7   *Id*. at fn10.

8        The parallel here is clear. Even if Amtrak were to claim reliance on the purported

9   representation of the PR as to authority to settle non-existent wrongful death claims (which was

10   never made, and appears nowhere in the settlement agreement), Amtrak is not able to enforce

11   such a contract because any purported release offered would have been *ultra vires* for the scope

12   of authority granted by Washington law to a PR. Put another way, the then-PR Thomas Hamre

13   would have been met with a dismissal of any claims for wrongful death that he purported to

14   bring on behalf of himself or his siblings, had those claims been adjudicated at the time of the

15   April 2018 Settlement Agreement. That is because those claims did not exist, as a matter of

16   law. As the *Frias* Court stated: "**One cannot waive a right that does not exist.**"

### B. The Present Wrongful Death Claims Do Not Belong to the Estate, nor Do They Inure to the Benefit of the Estate. They Belong Specifically to the Injured Family Members, and Pass outside of Probate.

19        Defendant Amtrak relies heavily on a faulty premise, contending that since the Estate

20   settled all its claims against Amtrak, there could be no claims that were "not time-barred" for

21   purposes of the Legislature's later creation of a cause of action for wrongful death for the benefit

22   of siblings. This betrays a lack of understanding of the nature of wrongful death claims.

PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

Case No. 3:20 -cv-05664-BHS - Page 16

**ROSSI VUCINOVICH**
A PROFESSIONAL CORPORATION
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

As discussed above, the claims of a wrongful death beneficiary do not belong to the Estate, nor are they for the Estate's benefit. Wrongful death claims are explicitly non-probate assets that belong to the injured third-party beneficiary, *not* to the Estate, and *not* to the Personal Representative. A Personal Representative in this circumstance is a procedural convenience, who acts on behalf of the third party as the statutory agent to advocate for those interests, but only where and when those interests exist.

The Court of Appeals explained this well in *Woodall v. Avalon Care Center*:

> Examination of the nature of the claims asserted in this action is helpful in addressing this argument. Survival actions and wrongful death actions, though often brought together, are conceptually distinct.

> The wrongful death statute, RCW 4.20.010, provides that when the death of a person is caused by the wrongful act of another, his personal representative may maintain an action for damages against the person causing the death. **The wrongful death statutes create new causes of action for the benefit of specific surviving relatives** to compensate for losses caused to them by the decedent's death.

> Our supreme court has explained that in this context, the personal representative of the estate "is merely a statutory agent or trustee acting in favor of the class designated in the statute, with no benefits flowing to the estate of the injured deceased." In other words, "'[u]nder no circumstances does the estate of the decedent benefit by the [wrongful death] action. Anything realized therefrom goes to the beneficiaries.

> A cause of action for wrongful death is not one which ever belonged to the decedent.

*Woodall v. Avalon Care Ctr.-Fed. Way, LLC*, 155 Wn. App. 919, 930–31, 231 P.3d 1252, 1257–58 (2010) (footnotes and internal citations omitted). The cause of action brought here is not for the benefit of the Estate, nor for the PR. It is a cause of action for each of the surviving siblings, and no one else.

PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

Case No. 3:20 -cv-05664-BHS - Page 17

**ROSSI VUCINOVICH**
A PROFESSIONAL CORPORATION
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

Amtrak's suggestion that there is only one singular action permitted under Washington's wrongful death statutes is a complete red herring, and immaterial. This is the only lawsuit ever presented to Amtrak arising from its negligent killing of Mr. Hamre. The April 2018 Settlement Agreement makes no allowance for wrongful death claims, and did not settle any. It certainly did not settle individual personal injury claims of third parties which did not yet exist. Michael Hamre and Mary Kellogg have indeed brought their claims together in this case, and present a single lawsuit for adjudication of their complaint. Amtrak's argument proves Plaintiff's point, and does nothing for their supposed basis for the motion: that Plaintiff has "failed to state a claim on which relief can be granted."

**C. The April 2018 Settlement Agreement Is Not a Valid Contract Sufficient to Bind the Present Wrongful Death Claimants.**

Taking the pled allegations as true, and construing all reasonable inferences in Plaintiff's favor from those allegations—as the Court must—the purported April 2018 Settlement Agreement is not a valid contract with regard to discharging Mary Kellogg or Michael Hamre's claims. These persons are not identified as parties to the contract, nor do their names appear anywhere even as potential persons whose claims are considered by the parties. No consideration was paid, nor were Mary Kellogg or Michael Hamre beneficiaries of the Estate at its closing. There is no mention of "wrongful death" claims anywhere in the Settlement Agreement. This is important and an important omission, as Washington law clearly states that such claims belong to third parties as a matter of law were such claims to be discharged by the agreement of a third party, that would be explicitly noted..

PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS
Case No. 3:20 -cv-05664-BHS - Page 18

**ROSSI VUCINOVICH**
A Professional Corporation
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

1    Although this motion does not afford the proper procedural mechanism for doing so,

2    Defendant Amtrak seeks to have the Court rule that former PR Thomas Hamre contractually

3    waived the rights of himself and his siblings, more than a year before those rights were even

4    created by law. "A waiver is the intentional and voluntary relinquishment of a known right. It

5    may result from an express agreement or be inferred from circumstances indicating an intent to

6    waive." *Bowman v. Webster,* 44 Wn.2d 667, 669, 269 P.2d 960 (1954). Here, there is no direct

7    waiver of third-party wrongful death claims; they are not listed or identified in the release. "To

8    constitute implied waiver, there must exist unequivocal acts or conduct evidencing an intent to

9    waive; waiver will not be inferred from doubtful or ambiguous factors. The intention to

10   relinquish the right or advantage must be proved, and the burden is on the party claiming waiver."

11   *Jones v. Best*, 134 Wn.2d 232, 241–42, 950 P.2d 1, 6 (1998), *as corrected* (Feb. 20, 1998)

12   (citations omitted). There simply was no knowing waiver here, as no reasonable party would

13   agree to waive wrongful death claims in this situation, in exchange for no consideration, and

14   where the claims did not even exist.

15   Any issues in this regard at best reflect ambiguities in the terms of the contract regarding

16   the scope of the claims to be released. Such ambiguities reflect disputed facts, and require a trial

17   to resolve (or at least discovery to further investigate). As stated above, Plaintiff does not concede

18   that it is even legally possible to release wrongful death claims of siblings in this circumstance,

19   since those claims did not exist as matter of law until July 2019. But even if it were *possible* to

20   do so, it was not *effectively* done here. The contract fails and is not enforceable against the present

21   claimants.

22

23   PLAINTIFF'S RESPONSE IN OPPOSITION
     TO DEFENDANT'S MOTION TO DISMISS

24   Case No. 3:20 -cv-05664-BHS - Page 19

**ROSSI VUCINOVICH**
A PROFESSIONAL CORPORATION
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

25

**D.  Defendants' Ill-Conceived Challenge to the Constitutionality of This Statute Is Not Properly Raised in a Rule 12 Motion to Dismiss.**

Defendant Amtrak fails to comply with the procedural requirements for challenging the constitutionality of a state statute. Federal Rule of Civil Procedure 5.1 makes plain the steps which are precedent to the litigation of a constitutional challenge. Amtrak has not done so here, and the Court should therefore strike and decline to consider Amtrak's constitutional claims at this procedural stage.

First, to challenge a statute's constitutionality, the State would have to have the option of weighing in and defending its constitutionality. Fed. R. Civ. P. 5.1. This accords with Washington law as well: "[I]f the statute, ordinance or franchise is alleged to be unconstitutional, the attorney general shall also be served with a copy of the proceeding and be entitled to be heard." RCW 7.24.110.  "Notification to the state attorney general is a mandatory prerequisite to challenge a statute's constitutionality." *Jackson v. Quality Loan Service Corp.*, 186 Wn. App. 838, 841, 347 P.3d 487 (2015).  That court went on:

> RCW 7.24.110 requires notification to the state attorney general when there is a constitutional challenge to state legislation. Jackson failed to notify the state attorney general. Dismissal of constitutional claims challenging the facial constitutionality of a state statute is appropriate where the state attorney general has not been notified.

*Id.* at 846 (citations omitted).

Even if the Court were to consider Defendant's procedurally-improper constitutional arguments, they are all fundamentally based on an erroneous assumption. There is no retroactive modification of any applicable law to their contractual agreement. That agreement between those

PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

Case No. 3:20 -cv-05664-BHS - Page 20

**ROSSI VUCINOVICH**
A PROFESSIONAL CORPORATION
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

1  settling parties remains unaffected. There simply was no contract at all between the present

2  wrongful death beneficiaries and Amtrak.

3  Additionally, there is no retroactive change in law applicable to the present wrongful

4  death beneficiaries' claims, because those claims are still timely presented within the operative

5  statute of limitations. Amtrak's constitutional arguments are red herrings here, and are

6  procedurally improper in any event. They should be stricken and disregarded.

7  **VI.    CONCLUSION**

8  One can lawfully waive the rights of another via contract, but only if that one is acting

9  with the contractually-assigned or legally-assigned right to do so. That is, without assignment or

10  power over the claim, one party cannot waive another unrelated party's rights. Here, the former

11  Personal Representative simply never had the ability to waive the separate wrongful death claims

12  of his siblings. No Personal Representative could have such power, until the Washington

13  Legislature created those claims. Put simply, Defendant Amtrak settled with some, but not all of

14  the injured parties in this incident. That leaves these newly-created wrongful death claims for

15  adjudication via this lawsuit.

16  This motion is styled as a Rule 12(b)(6) motion to dismiss, but it does not even attempt

17  to carry the burden to show any defect in pleading the elements of a wrongful death claim. Rather,

18  this motion presents little more than a premature and procedurally deficient summary judgment

19  motion. The Court should deny this motion, or if converted to a Rule 56 motion, should allow

20  Plaintiff adequate time to investigate the underlying disputed factual issues pursuant to Rule

21  56(d).

22

23  PLAINTIFF'S RESPONSE IN OPPOSITION
   TO DEFENDANT'S MOTION TO DISMISS

24  Case No. 3:20 -cv-05664-BHS - Page 21

**ROSSI VUCINOVICH**
A PROFESSIONAL CORPORATION
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

25

The Court should strike and disregard Amtrak's constitutionality arguments, as Defendant has failed to comply with Rule 5.1, and afford the State notice or the opportunity to defend the constitutionality of its remedial legislation. Even if the Court did consider those issues from a procedural standpoint, however, they need not be reached substantively. Put simply, there was no contract between Amtrak and the current wrongful death claimants. There is thus no interference with contract, nor any remedial change in status between the parties. There are no constitutional concerns raised here, even if they were properly presented to the Court.

The Court should deny Defendant Amtrak's motion, and require Amtrak to timely file an Answer to the well-pled allegations in the Complaint.

DATED this 31 day of August 2020.

ROSSI VUCINOVICH  PC


By:  */s/ Benjamin T. G. Nivison*
Benjamin T.G. Nivison, WSBA #39797
ATTORNEYS FOR PLAINTIFF

PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS
Case No. 3:20 -cv-05664-BHS - Page 22

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on DATE, I electronically filed the foregoing RESPONSE IN

3

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS with the Clerk of the Court using

4

CM/ECF System which will send notification of such filing to the following:

5

Tim D. Wackerbarth
Andrew G. Yates

6

Warren E. Babb, Jr.
Jeffrey M. Odom

7

Lane Powell, PC
1420 Fifth Ave, Suite 4200

8

P.O. Box 91302
Seattle, WA 98111-9402

9

and I hereby certify that I have mailed by U.S. Mail the documents to the following non

10

CM/ECF participants:

11

12

Dated:  8/31/2020

13

By: /Benjamin Nivison

14

Benjamin T. G. Nivison, WSBA #39797

15

16

17

18

19

20

21

22

23

PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

24

Case No. 3:20 -cv-05664-BHS - Page 23

**ROSSI VUCINOVICH**
A PROFESSIONAL CORPORATION
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

25