UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARY A KELLOGG, as the Personal Representative of the ESTATE OF JAMES HAMRE,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION, et al.,<br><br>　　　　　　　Defendants. | CASE NO. C20-5664BHS<br><br>ORDER DENYING MOTION TO DISMISS AND NOTIFYING PARTIES OF INTENT TO CERTIFY QUESTIONS |

THIS MATTER is before the Court on Defendant Amtrak's Motion to Dismiss, Dkt. 6, and Amtrak's Motion for Judicial Notice, Dkt. 7.

The motions and the case involve the effects of the July 2019 revisions to Washington's "Survival of Actions" statute, RCW Chapter 4.20. Specifically, the Washington Legislature eliminated the long-standing rule that a decedent's estate's "second tier" beneficiaries (parents and siblings) did not have standing to assert a wrongful death claim unless they were dependent upon the decedent for financial support. Under the amended statute, if there are no first tier beneficiaries, an adult

ORDER - 1

decedent's parents and siblings may assert a wrongful death claim even if they were not financially dependent on the decedent. The revised statute's official notes explain that it applies retroactively to "all claims that are not time-barred, as well as any claims pending in any court on July 28, 2019." Official Note to RCW 4.20.020 (2019), c.150. *See also* Dkt. 10, at Ex. A, Certificate of Enrollment of Substitute Senate Bill 5163 ("This act is remedial and retroactive and applies to all claims that are not time barred, as well as any claims pending in any court on the effective date of this section.").

James Hamre died as a result of the December 18, 2017 derailment of Amtrak 501 near DuPont, Washington. He had no first-tier beneficiaries. Under former RCW 4.202.020, he had only one second tier beneficiary, his mother, Carolyn.[1] In 2018, his Estate's Personal Representative settled with Amtrak and executed a broad release. The Washington Legislature revised RCW 4.20.020 a year later, making James's siblings eligible to assert wrongful death claims notwithstanding their lack of financial dependency on him, and, perhaps, notwithstanding the prior settlement. Two of those siblings, Mary and Michael, now assert state law wrongful death claims under the revised statute, invoking the Court's diversity jurisdiction. Dkt. 1.

Amtrak seeks dismissal, arguing that the settlement and the Personal Representative's Release bar the new claims—on the new statute's effective date, the Estate no longer had any claims that were "not time-barred," and none were "pending in any Court." *See* Dkt. 6 at 8. It argues that Washington law permits only a single wrongful

---

[1] This Order refers to the Hamre family members by their first names for clarity.

death action, even where there are multiple claimants. Amtrak argues that the new statute is substantive, not remedial, and cannot be applied retroactively to deprive it of vested rights. Indeed, it argues retroactive application in this context would violate Due Process and the Contracts Clause under both the Washington and United States Constitutions.

Mary argues that Amtrak's motion is not properly brought under Fed. R. Civ. P. 12(b)(6) because she has plainly stated a plausible wrongful death claim under the new statute. She argues the Release did not bind James's siblings because the then-Personal Representative (her brother Thomas) did not have the authority or the intent to waive claims that did not exist when he released them—Mary and Michael simply were not parties to the settlement. She emphasizes that wrongful death claims do not belong to the Estate and do not derive from it. Amtrak and the former Personal Representative agreed to settle only the Estate's survival action and Carolyn's wrongful death action, and there was no consideration for any release of the siblings' claims. Mary argues that it is not unusual or impermissible for a tortfeasor to settle with some but not all claimants and that Amtrak's constitutional challenge to the new statute is improperly asserted and ultimately ineffective.

It is not clear whether the Washington Legislature anticipated that one potential effect of the statute's amendment would be the assertion of wrongful death claims by newly authorized second tier beneficiaries against tortfeasors that had already settled with, and been released by, the decedent's estate. Because this ramification of the amendment presents novel questions of state law, the Court will certify them to the

Washington State Supreme Court, as discussed below. Until that Court resolves the core issue, Amtrak's Motion to Dismiss is DENIED.

## I. BACKGROUND

James Hamre, an adult, died as the result of the December 18, 2017 derailment of Amtrak 501. James was not married and no children. His Estate thus had no "first tier" beneficiaries under former or current RCW 4.20.020. He was survived by his mother, Carolyn, and siblings Thomas, Mary, and Michael.

Former RCW 4.20.020 did not permit wrongful death claims on behalf of second tier beneficiaries unless the second-tier beneficiaries were dependent on the decedent for support (and were residents of the United States):

> Every such action shall be for the benefit of the wife, husband, state registered domestic partner, child or children, including stepchildren, of the person whose death shall have been so caused. If there be no wife, husband, state registered domestic partner, or such child or children, such action may be maintained for the benefit of the parents, sisters, or brothers, who may be dependent upon the deceased person for support, and who are resident within the United States at the time of his or her death.

Former RCW 4.20.020; *see also Philippides v. Bernard*, 151 Wn.2d 376, 393–94 (2004) (confirming that the parents of adult decedents were not eligible to assert wrongful death claims unless they were financially dependent on the decedent).

Carolyn was financially dependent on James at the time of his death and was therefore the sole heir of his Estate—the only person eligible to assert a wrongful death claim under the version of the statute in effect when James died. Dkt. 8-2. Thomas, Mary, and Michael did not depend on James for support and were thus prohibited from asserting

wrongful death claims under the version of the statute in effect at the time James died (and at the time Thomas settled the Estate's and Carolyn's claims and released Amtrak).

Carolyn declined to act as the Estate's Personal Representative, and Thomas was appointed in her stead. Yates Dec., Dkt. 8-1. In April 2018, James's Estate and its beneficiaries, through Thomas, reached an out-of-court settlement with Amtrak. Dkt. 8-8. The Estate received an undisclosed sum in exchange for a full release of all conceivable claims arising from James's death, known or unknown.[2] On July 18, 2018, Carolyn received 100% of the distributive share of the settlement, and Thomas confirmed that the administration of James's Estate was complete the same day. Dkt. 8-9.

More than a year later, the Legislature revised Chapter 4.20 RCW, including RCW 4.20.020. Under the amended statute, if there are no first tier beneficiaries, second tier beneficiaries can maintain a wrongful death action even if they are not dependent on the decedent (and even if they do not reside in the United States):

> Every action under RCW 4.20.010 shall be for the benefit of the spouse, state registered domestic partner, child or children, including stepchildren, of the person whose death shall have been so caused. If there is no spouse, state registered domestic partner, or such child or children, such action may be maintained for the benefit of the parents or siblings of the deceased.

---

[2] Thomas broadly released "Any and all claims, demands, actions, causes of action of every kind, verdicts, judgments and awards of every kind whatsoever, for any injuries or damages, loss of property or properly damage, any other type of damages, costs, expenses, attorneys' fees, contribution, indemnity, reimbursement, compensation of any kind, and losses now existing, or which may hereinafter arise, whether known or unknown, sustained or received by the Releasor and Decedent James H. Hamre, as a passenger on Amtrak Train 501 at or near Dupont, Washington on December 18, 2017[.]" Dkt. 8-8 at 2.

Mary's contention that the Release was not broad enough to cover her claims is not persuasive. The issue is whether the statutory amendment created new claims notwithstanding the settlement and release, not whether the Release should have been more specific.

RCW 4.20.020.

In April 2020, Thomas petitioned to re-open James's Estate to permit Mary and Michael to assert wrongful death claims as beneficiaries under the new statute. The Court Commissioner granted that request. Dkt. 8-14. In May 2020, Thomas resigned as the Estate's Personal Representative, and Mary was named Personal Representative of the re-opened Estate in his place. Dkts. 8-15, 8-16.

In July 2020 Mary sued Amtrak on behalf of herself and Michael, asserting wrongful death claims arising out of James's death. Dkt. 1. Thomas did not assert a claim, and any claims on his behalf are now presumably time-barred.[3]

## II.   DISCUSSION

**A.     The Court will take Judicial Notice of the Referenced Documents.**

As an initial matter, Amtrak's Request for Judicial Notice of James's probate file, the prior settlement, and the legislative history of the 2019 amendments to Chapter 4.20 RCW, Dkt. 7, is GRANTED. There can be no doubt about the authenticity of these documents, and despite her objections, Mary relies on several of them in her complaint, Dkt. 1, and her Response, Dkt. 9. These documents are cited above, and are attached as Exhibits to the Yates Declaration, Dkt. 8. The Court also takes Judicial Notice of the Certificate of Enrollment of Substitute Senate Bill 5163, attached to the Nivison Declaration, Dkt. 10, at Ex. A.

---

[3] In the Release, Thomas "represent[ed] and warrant[ed] that no other person or entity has, or has had, an interest in the claims[,]" and that he "ha[d] the sole and exclusive authority to execute" the release. Dkt. 8-8, ¶ 11. He did not agree to indemnify Amtrak from the assertion of other claims.

The Court will not convert this motion to one for summary judgment or permit additional discovery. The relevant facts are not disputed; they are not disputable. And, in any event, Amtrak's Motion to Dismiss is denied. The Court is instead Certifying to the Washington Supreme Court a novel question of local law created by the new statute and the unusual, if not unique, context of this case. The issue presented is purely one of law.

**B.      The Court intends to Certify the Core Question to the Washington Supreme Court.**

The Court will accept Mary's assertion that the Release did not apply to claims that did not then exist and that the Legislature consciously chose to retroactively permit the assertion of new wrongful death claims by newly eligible second tier beneficiaries, so long as they were not time-barred. But that is not the end of the inquiry in a case where all claims arising from the death have been fully and fairly settled.

Amtrak argues that permitting Mary and Michael to assert wrongful death claims after Thomas released it from all claims arising from James's death, known or unknown, would obviate the release and unfairly and unconstitutionally deprive Amtrak of its vested rights. Thus, it argues, the new statute reflects a substantive change, not a remedial one, and it cannot be applied retroactively.

RCW 4.20.020's financial dependency and residency[4] requirements have long been considered in some quarters to be unfair. Nevertheless, the former statute survived a robust challenge in court. *See Philippides*, 151 Wn.2d at 382, 393–94 (answering in the

---

[4] Proponents of the amendment argued that the residency requirement was originally imposed to protect the employers of Chinese railroad laborers who died on the job from wrongful death claims by their overseas families. Dkt. 8-11.

affirmative the following Certified Question from this Court: "Must a parent of an adult child have been financially dependent upon that child as a condition precedent to commencing suit for the child's injury or death pursuant to Washington's wrongful death and survival statutes?").

The Washington Legislature was apparently not moved to amend these requirements until the aftermath of the 2015 "Ride the Ducks" accident. There, an amphibious boat collided with a bus, killing and injuring many international students and tourists. The victims' survivors could not assert wrongful death claims because they were not United States residents. The Washington Legislature amended the statute in 2019, in an effort to fill these both of these "holes" in the statute. *See* Dkts. 8-10, 8-11.

The Legislature characterized the statute as "remedial," but as Amtrak persuasively points out, it is well-settled that "an amendment is curative and remedial if it clarifies or technically corrects an ambiguous statute without changing prior case law constructions of the statute." Dkt. 6 at 13 (quoting *Cameron v. Atlantic Richfield Co.*, 8 Wn. App. 2d 795, 807–08 (2019)); *see also Barstad v Stewart Title Guar. Co.*, 145 Wn.2d 528, 537 (2002). A statute may not be retroactively applied if its effect is instead to deprive one of vested rights because doing so would violate due process. *See In re F.D. Processing*, 119 Wn.2d 452, 463 (1992) ("An amendment is deemed remedial and applied retroactively when it relates to a practice, procedure, or remedies, and does not affect a substantive or vested right.").

Amtrak cites persuasive authority from Missouri and Wisconsin holding in analogous contexts that amended wrongful death statutes could not be applied

retroactively to deprive the tortfeasor of vested rights in the form of a prior settlement of all claims arising from the tort. Doing so, these courts held, would unfairly overturn settled expectations and violate Due Process under the state and federal Constitutions. *See Kinder v. Peters*, 880 S.W.2d 353 (Mo. Ct. App. E.D. 1994); *Nieman v. Am. Property & Casualty Co.*, 613 N.W.2d 160 (2000).

Amtrak also argues persuasively that the Washington wrongful death statute permits only a single action arising from a tortious death. Mary counters that this *is* the only wrongful death action arising from James's death, but her position ignores the fact that Amtrak settled, promptly, in an effort to avoid litigation—consistent with the laudable and clear public policy goal of encouraging settlements. *City of Seattle v. Blume,* 134 Wn.2d 243, 258 (1997) ("The express public policy of this state is to encourage settlement."). The law "strongly favors" settlement. *Seafirst Ctr. Ltd. P'hip v. Erickson,* 127 Wn.2d 355, 365 (1995) (citing *Seafirst Ctr. Ltd. P'ship v. Kargianis, Austin & Erickson,* 73 Wn. App. 471, 476 (1994)).

It would be an odd and counter-intuitive result if, as Mary suggests, Amtrak's position would have been stronger if it had forced Thomas to litigate his claims, lost, and paid the verdict rather than agreeing to promptly settle without litigation. Amtrak accurately points out that it faces the re-litigation of many of its prior settlements if the new class of second tier beneficiaries is free to sue notwithstanding a prior settlement and release. And it is clearly not the only tortfeasor potentially facing newly-minted claims arising from torts that have already been settled and resolved.

The application of the new statute in this context presents a novel question of Washington law best resolved by the Washington Supreme Court. RCW 2.60.030 is the vehicle through which federal courts may ask the Washington Supreme Court to rule upon unanswered questions of local law:

> When in the opinion of any federal court before whom a proceeding is pending, it is necessary to ascertain the local law of this state in order to dispose of such proceeding and the local law has not been clearly determined, such federal court may certify to the supreme court for answer the question of local law involved and the supreme court shall render its opinion in answer thereto.

Certification preserves important judicial interests of efficiency and comity. The certification process saves "time, energy, and resources and helps build a cooperative judicial federalism." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974).

The Court therefore proposes Certification of the following questions to the Washington Supreme Court:

1. Is the revised RCW 4.20.020 remedial such that it applies retroactively to permit second tier beneficiaries who were not eligible to assert wrongful death claims at the time of the decedent's death, or at the time the Estate's Personal Representative settled all claims arising out of the death, to assert wrongful death claims notwithstanding the tortfeasor's settlement with, payment to, and release by, the Personal Representative, so long as such new claims are not time-barred?

2. If so, does the application of the revised RCW 4.20.020 to permit such claims in this context affect Amtrak's vested substantive rights, thus violating the

Washington Constitution's Due Process (Wash. Const., art. I, § 3) or Contracts (Wash. Const., art. I, § 23) Clauses?

The parties are invited to respond to the Court's proposal, and to consult and submit revised or alternative questions, either together or separately, within ten days of this Order. The Court will then decide whether to Certify Question(s) to the Washington Supreme Court, and Stay this case pending the Answer. Amtrak's Motion to Dismiss, Dkt. 6, is **DENIED**.

**IT IS SO ORDERED.**

Dated this 31st day of March, 2021.

BENJAMIN H. SETTLE
United States District Judge